[No. 28030. *En Banc.* September 20, 1941.]

THE STATE OF WASHINGTON, *on the Relation of William H. Brown, Appellant,* v. G. H. GANNON *et al., Respondents.*[1]

*E. W. Anderson,* for appellant.

*The Attorney General, John E. Belcher, Assistant,* and *Weter, Roberts & Shefelman,* for respondents.

[1] Reported in 117 P. (2d) 215.

DRIVER, J.—The relator, a school teacher, brought this action in the superior court for Thurston county, seeking a writ of mandate to compel the board of regents of the state college of Washington to grant to him, and to compel the state superintendent of public instruction to countersign, a life diploma. A trial to the court resulted in the entry. of a judgment denying the peremptory writ and dismissing the action. The relator appealed.

There is no dispute as to the pertinent facts. Upon his graduation from the state college in 1928, appellant received the degree of bachelor of arts and a five-year normal diploma, which diploma was subsequently renewed by the respondents for a two-year period ending in July, 1936. In October, 1937, appellant wrote to the registrar of the college:

"I am anxious to receive some information in regard to securing a life diploma. I graduated from W. S. C. in 1928, and since then have taught 8 years."

The following December, the dean of the school of education answered by letter:

"We are permitted to issue life diplomas only to those who have a normal diploma in effect. That is, we cannot issue a life diploma on an expired normal diploma. . . .
"It would seem to me that the best procedure for you would be to work toward a new form certificate, using in the meantime the certificate you now have. I take it you are teaching on a Tacoma city certificate."

August 19, 1939, appellant mailed a letter to the school of education, stating:

"As I understand the Law of 1923, which is still in force, a graduate of the State College, who has completed 24 months of successful teaching, is entitled to the Life Diploma. I have had 10 years and in addition, have taken enough graduate work to credit me with 139 hours.

"In order for the Board of Regents to issue a Life Diploma a recommendation of the faculty is necessary. I should appreciate it if you would advise me if they will make this recommendation."

The registrar of the college, by letter dated August 22, 1939, informed the appellant that:

"Under the new state requirements no life diplomas will be issued after September 1, 1938. It is, therefore, necessary to meet the new requirements for the three-year secondary certificate which includes 158 hours of credit."

The appellant then commenced the instant action for writ of mandate. He says that the lower court should have granted the writ because it was the mandatory, ministerial duty of the board of regents to grant him a life diploma under the terms of Rem. Rev. Stat., § 4599 [P. C. § 4809], which reads:

"The board of regents shall grant to every student, upon graduation, a suitable diploma or degree, such student having been recommended for such honor by the faculty. The board shall also have power, upon recommendation of the faculty, to confer the usual honorary degrees upon other persons than graduates of this college in recognition of their learning or devotion to literature, art or science; but no degree shall ever be conferred in consideration of the payment of money or other valuable thing. *The said board is also empowered, upon recommendation of the faculty, to grant normal diplomas which shall entitle the holder to teach in any public school in the state for a period of five years; and to grant life diplomas to candidates who shall give satisfactory evidence of having taught successfully for twenty-four (24) months: Provided, that all candidates for the normal diploma and life diploma shall have satisfactorily completed not less than twelve semester hours in the department of education.*" (Italics ours.)

At the threshold of the case, we meet a contention of the respondents that, under the terms of

the foregoing section, the board of regents is not empowered to grant any teaching diplomas, either for five years or for life, except upon recommendation of the faculty; and that appellant is not entitled to prevail because he has never secured such a recommendation. The contention calls for the analysis and construction of the statute in question.

Stripped of nonessentials, the key sentence reads: "The board . . . is . . . empowered, upon recommendation of the faculty, to grant normal diplomas . . . ; and to grant life diplomas . . . " "The board" is the subject of the sentence, and "is . . . empowered" is the verb. The verb is modified by the prepositional phrase "upon recommendation of the faculty," and is followed by two infinitive phrases: (1) "to grant normal diplomas . . . " and (2) "to grant life diplomas . . . " How can we say that the phrase "upon recommendation of the faculty" modifies the verb when we consider the first infinitive, but does not modify it when we consider the second infinitive? The logical, natural, and unstrained grammatical analysis of the sentence seems to impel the conclusion that the phrase "upon recommendation of the faculty" modifies the common verb "is . . . empowered" as to both infinitive phrases, namely, "to grant life diplomas . . . " as well as "to grant normal diplomas . . . "

The legislature, in the statute under consideration, specifically required recommendation by the faculty for all other types of diplomas or degrees, and it seems reasonable to assume that, had it intended to make a single exception in the case of life diplomas, it would have so provided in clear and definite terms. Moreover, the board of regents is a policy-forming body which exercises functions roughly analogous to those of the board of directors of a private corpora-

tion. The regents may be, and usually are, "laymen" in relation to the teaching profession. They do not ordinarily keep in touch with individual students or graduates of the college, and the legislature may well have contemplated that they are not so well qualified as the faculty to determine the aptitude and fitness of candidates for teaching diplomas.

It is our conclusion, then, that the cited statute requires a recommendation by the faculty as a prerequisite to the granting of a life diploma by the board of regents.

The appellant has never secured such a recommendation, and is not entitled to a writ of mandate to compel the board to act in his behalf. It is a well-settled rule that the writ will not issue until the relator has performed every act which is a condition precedent to his right to the relief sought. *Sherman v. Wright*, 133 Cal. 539, 65 Pac. 1096; *Lamb v. Harrison*, 91 Fla. 927, 108 So. 671; *Longnecker v. Estes*, 300 S. W. (Tex. Civ. App.) 968; *Ross v. County Court*, 147 Ore. 695, 35 P. (2d) 484.

Appellant, in his brief, concedes

" . . . that were [where] a board can confer degrees or issue diplomas only on recommendation of the faculty mandamus will not lie to compel the board to act in the absence of a faculty recommendation (*Steinhauer v. Arkins*, [18 Colo. App. 49] 69 Pac. 1075, . . . "

But, in addition to the assertion that, rightly construed, the statute does not require faculty recommendation in the case of a life diploma, he also maintains that, in any event, he should not be required to procure such recommendation because the state college informed him that the issuance of life diplomas had been discontinued, and, he says, the law will not compel him to do a useless thing.

Appellant's argument would be apt if the require-

ment were that he make a demand upon the faculty for a recommendation before starting his action. But that is not the situation here. The prerequisite in this case is that he actually have a recommendation from the faculty before the board of regents is empowered to issue him a life diploma. The appellant did, in effect, request a recommendation of the faculty in his letter of August 19, 1939; and the faculty, in effect, refused the request in its answering letter of August 22nd. Whether or not there was justification for such refusal is a question which is not now before the court. No member of the faculty is a party to the present action. A faculty recommendation, not merely a demand upon the faculty therefor, is a condition precedent to appellant's right to the issuance of a life diploma by the board of regents. The performance of the condition may not be excused simply because demand has been made and has been refused, or because the making of a demand would be useless.

In view of our conclusion, we shall not pass upon the other defenses raised by the respondents in the court below and on the appeal.

Judgment affirmed.

ALL CONCUR.